**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TESSLER & WEISS/PREMESCO, INC. <br><br> Plaintiff, <br><br> v. <br><br> SEARS HOLDING MANAGEMENT CORPORATION, d/b/a KMART <br><br> Defendant. | Civ. No. 09-1243 (DRD) <br><br><br> **O P I N I O N** |

*Appearances by:*

EINHORN, HARRIS, ASCHER, BARBARITO & FROST
by: Andrew S. Berns, Esq.
Timothy J. Ford, Esq.
165 E. Main Street
P.O. Box 3010
Denville, NJ 07834

    *Attorneys for Plaintiff,*

SISSELMAN & SCHWARTZ, LLP
by: Martin L. Sisselman, Esq.
75 Livingston Avenue
Roseland, NJ 07068

    *Attorney for Defendant.*

**DEBEVOISE, Senior District Judge**

    This matter comes before the court on Defendant, Sears Holding Management

Corporation, d/b/a Kmart's ("Kmart"), Rule 12(b)(6) motion to dismiss, or in the alternative, to

transfer venue to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). The dispute underlying this case grew out of a long-term consignment and asset sale relationship between the parties. Business relations between the parties soured in 2008 under circumstances that are not relevant here. On March 18, 2009, Plaintiff, Tessler & Weiss/Premesco, Inc. ("Tessler"), filed its complaint in this court, alleging claims for breach of contract, unjust enrichment, account stated, book account, quantum meruit, and breach of the implied covenant of good faith and fair dealing. Both parties argue that a forum selection clause should determine the appropriate forum for this suit, but disagree as to which of two documents, each containing a conflicting forum selection clause, controls. For reasons detailed below, the court will treat this motion as a § 1404(a) motion to transfer venue. The court finds that the forum selection clause contained in the contract offered by Kmart, pointing to the Eastern District of Michigan, is the enforceable agreement of the parties. Accordingly, this case will be transferred to the Eastern District of Michigan.

## I. Background

Tessler is a wholesale distributor of gold jewelry. (Decl. of Peter Braz, "Braz Decl." ¶ 3.) Tessler is incorporated in New Jersey, where its principal place of business is also located. (Id.) Kmart is a national retailer incorporated under Michigan law and it appears that its principal place of business is in Illinois[1] and that it maintains retail locations in New Jersey. (Decl. of Amy Gorman, "Gorman Decl." ¶ 2.)

On March 18, 2009, Plaintiff, Tessler & Weiss/Premesco, Inc. ("Tessler"), filed its complaint alleging claims for breach of contract, unjust enrichment, account stated, book

---

[1] Although Kmart did provide the court with information about its principal place of business, the court will infer that its headquarters are now located in Illinois, because all recent correspondence provided by the parties is addressed to Kmart buyers and other employees at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

account, quantum meruit, and breach of the implied covenant of good faith and fair dealing. On July 21, Kmart filed the present motion.

Kmart states that the parties executed a contract referred to as the Kmart Corporation Purchase Order Terms and Conditions ("POTC") in 2001.[2]  (Gorman Decl. Ex. 1.)  Thereafter, the terms contained in the POTC were to "apply to all purchase orders issued to Vendor [Tessler] by Buyer [Kmart]."  (Id.)  The agreement contained a forum selection clause and choice of law provision titled "Michigan Contract and Jurisdiction," that states, in relevant part:

> EACH ORDER, AND ALL OTHER ASPECTS OF THE BUSINESS RELATIONSHIP BETWEEN BUYER AND VENDOR, MUST BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN.  VENDOR AGREES, WITH RESPECT TO ANY LITIGATION WHICH RELATES TO ANY ORDER OR WHICH OTHERWISE ARISES DIRECTLY OR INDIRECTLY OUT OF OR IN CONNECTION WITH SAID BUSINESS RELATIONSHIP OR ANY TRANSACTION OF ANY NATURE BETWEEN BUYER AND VENDOR, TO COMMENCE SAME (I) EXCLUSIVELY IN (AND VENDOR HEREBY CONSENTS TO THE JURISDICTION OF) THE STATE OF MICHIGAN COURTS OF OAKLAND COUNTY, MICHIGAN OR THE UNITED STATES DISTRICT COURT IN DETROIT, MICHIGAN[…]  (Id.)

The parties executed a Master Consignment Agreement ("MCA") in June 2007.[3]  (Compl. Ex. G.)  Paragraph one of the agreement, titled "Incorporation of General Terms," provides:

> Company and Consignor are parties to a Purchase Order Terms and Conditions ("General Terms").  Unless otherwise provided, all terms in this Consignment Agreement are as provided in the General Terms.  This Consignment Agreement amends and supplements the General Terms to permit the described consignment business transaction between Company and Consignor.  The General Terms are otherwise not amended or altered by this Consignment Agreement.  (Id.)

The MCA was otherwise silent with respect to jurisdiction and venue.  (Id.)

---

[2] The POTC was signed by Pete Braz on behalf of Tessler on June 20, 2001, and by a Kmart representative on August 1, 2001.
[3] The MCA was signed by Pete Braz on June 15, 2007, and by a Kmart representative on June 28, 2007.

Tessler acknowledges that the parties executed the POTC, containing the Michigan forum selection clause, in 2001.  (Braz Decl. ¶ 10.)  However, Tessler states that the POTC was superseded by a September 5, 2002 letter ("Letter Agreement") written by Pete Braz as Tessler's Vice President of Sales.  (Braz Decl. Ex. D.)  The letter states, in relevant part:

> This letter will serve to clarify the terms and conditions by which Tessler & Weiss/Premesco, Inc. (Tessler) will increase the consignment of goods as reflected on Kmart's attached "Assortment Plan by Volume" spreadsheet dated 9/05/02 and Kmart's Consignment Inventory Form.  The Plan lists the sizes, quantities and prices that comprise the increased consignment.
>
> This letter amends Kmart's form Consignment Agreement and Terms and Conditions as follows:
>
> 1. **Title.**  Title to all consigned rings remains with Tessler until Kmart pays for the rings.  […]
>
> 2. **Termination.** Either party may terminate this agreement on 30 days written notice.  […]
>
> 3. In the event of any conflict between this letter and any other agreements, the terms in this letter shall take precedence and control.
>
> […] (Id.)

The Letter Agreement closes by requesting that a Kmart representative confirm its contents with an authorized signature in order to make it binding.  (Id.)  The letter is signed by a Kmart representative.  (Id.)  Tessler claims Pete Braz provided Kmart with another document, the "Tessler & Weiss Terms and Conditions" (TWTC), in conjunction with the Letter Agreement, as a separate document.  (Braz Decl. ¶ 11.)  The TWTC is not expressly referenced in the Letter Agreement.  (Braz Decl. Ex. D, ¶ 11.)  Paragraph 13 of the TWTC contains a provision titled "Governing Law; Submission to Jurisdiction," that states as follows:

> All agreements between Buyer and Seller, including the transaction to which this invoice relates and any matters relating hereto or arising therefrom, shall be governed by the substantive laws of the State of New Jersey.  Buyer submits irrevocably to the jurisdiction of the courts of New Jersey and of the Federal

4

> Courts of the State of New Jersey with respect to any actions or proceedings relating to any such agreements, agrees to commence any actions or proceedings in such courts and consents to service of process by mailing of copies to Buyer at its address on the reverse hereof, such service to be effective ten days after mailing. (Braz Decl. Ex. E.)

Tessler states that the TWTC governed the business relationship between the parties until the relationship ended in June 2008. (Braz Decl. ¶ 12.) Tessler does not provide a copy of the TWTC executed by either party and does not claim that Kmart ever signed the TWTC. (Id. Ex. E.) The copy of the TWTC that Tessler provides to the court is attached to a blank invoice form. (Id.)

Tessler additionally points to a letter written by Amy Gorman, a buyer for Kmart. The letter is addressed to Tom Stier, Tessler's General Manager. (Id. Ex. F.) It states, in relevant part:

> First, the letter purports to terminate the September 5, 2002 Master Consignment Agreement. As I am sure you must be aware, the September 5, 2002 Master Consignment Agreement was superseded by the Master Consignment Agreement (the 'Existing Agreement') which became effective June 12, 2007. (Id.)

Tessler acknowledges that the 2007 MCA was executed jointly by both parties and does not contain a novel forum selection clause. (Id. ¶ 13.)

## II. Discussion

As a preliminary matter, it is necessary to address the nature of this motion. The Court of Appeals for the Third Circuit has considered the issue of whether the proper procedure for enforcing a forum selection clause is dismissal or transfer. Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289 (3d Cir. 2001). In Salovaara, the defendant moved to dismiss certain counts of the complaint because the parties had entered into an agreement containing a forum selection clause that defendant argued covered the subject matter of those claims. Id. at 293. In the

5

absence of a forum selection clause, venue would have been proper.  Id. at 298.  The clause specified that suit should be brought in either the state courts located in New York County or the Southern District of New York.  Id.  The district court applied a § 1404(a) balancing test and ultimately decided to dismiss the case.  The Court of Appeals examined the procedural devices a court could use when a party files suit in a federal court that is not the federal court named in a controlling forum selection clause.  Id. at 298-99.  The Court of Appeals determined that when a party files a motion to dismiss based on a forum selection clause, the court has discretion to dismiss the claim.  Id. at 299.  However, the court noted that, "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than to dismiss."  Id.

      The court must first consider whether venue would be proper in this court.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).  This case is before us on federal diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  It appears that the parties are diverse.  Kmart is incorporated in Michigan and appears to have its principal place of business in Illinois, whereas Tessler is both incorporated and maintains its principal place of business in New Jersey.  Furthermore, the parties do not dispute that the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.  28 U.S.C. § 1391 provides that:

> (a)  A civil case wherein jurisdiction is founded on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
> […]
> (c)  For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  […]

6

Therefore, venue is proper if because it appears that Kmart does business in New Jersey. See Stewart Organization, Inc. v. Rioch Corp., 487 U.S. 22, 29 n. 8 (1988). Thus, venue would be proper in either this court or the Eastern District of Michigan.[4]

In light of the wisdom offered by the Court of Appeals in Salovaara as to the preference for transfer rather than dismissal when venue would be proper but a forum selection clause points to another federal venue, and taking into consideration the nature of Kmart's present motion, which is styled in the alternative as a motion for transfer under § 1404(a), the court will apply § 1404(a) instead of 12(b)(6).

Section 1404(a) involves a multi-factor balancing test in which a contractual forum selection clause carries substantial, although not dispositive weight. Jumara v. State Farm Ins. Co., 55 F.3d 873, 875 (3d Cir. 1995). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The burden of establishing the need for transfer still rests with the movant." Jumara, 55 F.3d at 879 (3d Cir. 1995). "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Id.

Although there is no definitive list of factors to consider, courts evaluate both private and public interests. Id. Private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records. Id. (citations omitted).

---

[4] Venue is proper in the Eastern District of Michigan, since Kmart is incorporated in Michigan, and therefore "resides" there. 28 U.S.C. § 1391(a)(1).

Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-880 (citations omitted).

"Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Id. at 880. Furthermore,

> [a]lthough the parties' agreement as to the most proper forum should not receive dispositive weight, it is entitled to substantial consideration. Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue. Where the forum selection clause is valid, which requires that there have been no "fraud, influence, or overweening bargaining power," the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum. Id. (citations omitted).

A forum selection clause is generally valid and enforceable unless the party objecting to its enforcement establishes the existence of "fraud, influence, or overweening bargaining power." Id. at 880 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972). In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal and not state law, since the enforcement of forum selection clauses is essentially a procedural matter. Id. at 877.

The court must first determine which forum selection clause governs the relationship between the parties, since Tessler and Kmart both offer conflicting forum selection clauses. The court is persuaded that, based on the face of the documents offered by the parties, the POTC contains the only forum selection clause agreed to by both parties. (Gorman Decl. Ex. 1.)

The POTC was signed by representatives of both parties in 2001. (Id.) The POTC contained a forum selection clause pointing to "the State of Michigan Courts of Oakland County,

8

Michigan or the United States District Court in Detroit, Michigan." Later, the POTC was named and specifically incorporated in the MCA, which both parties signed in 2007. (Compl. Ex. G.) The MCA stated:

> Company and Consignor are parties to a Purchase Order Terms and Conditions ("General Terms"). Unless otherwise provided, all terms in this Consignment Agreement are as provided in the General Terms. This Consignment Agreement amends and supplements the General Terms to permit the described consignment business transaction between Company and Consignor. The General Terms are otherwise not amended or altered by this Consignment Agreement. (Id.)

The MCA did not address forum selection, so according to the terms of the MCA, the forum selection clause agreed to by the parties in the POTC remained in effect.

Tessler's arguments in support of its conflicting forum selection clause are unconvincing. Tessler argues that a Letter Agreement "specifically rescinded" and "clearly revoked" the POTC. (Opp. Brief at 3, 6, 13.) The Letter Agreement "amends Kmart's form Consignment Agreement and Terms and Conditions" in three ways, but none of those amendments address forum selection. (Braz Decl. Ex. D.) The Letter Agreement, by its terms, does not revoke or rescind, but rather "amends" Kmart's "Terms and Conditions." Therefore, based on the plain terms of the Letter Agreement, it did not supersede the forum selection clause contained in the POTC.

Tessler argues that Kmart agreed to the TWTC, containing the New Jersey forum selection clause, at the same time as it agreed to the Letter Agreement. The Letter Agreement does not reference the TWTC at all. Tessler does not provide any documentary evidence that Kmart agreed to the TWTC in conjunction with the Letter Agreement. Tessler seems to argue that because Kmart signed the Letter Agreement, it also agreed to the TWTC. This argument is unconvincing. If Tessler and Kmart had reached an agreement about the TWTC, a document that would have changed such important terms relating to the parties' relationship as indemnification, representations and warranties from Tessler, cancellation, and Michigan law

9

and venue, then they would have memorialized that agreement in some way. (See Braz Decl. Ex. E, Gorman Decl. Ex. 1) Tessler has not provided a signed copy of the TWTC.

The only evidence Tessler provides in support of its contention that Kmart agreed to the TWTC is the declaration of Pete Braz, which emphatically states that he "specifically discussed each of the provisions of the…[TWTC] with Steve Scott [a Kmart employee] in an effort to avoid any confusion or misunderstanding." Although Braz may have attempted to make himself clear through discussions, the dearth of documentary evidence shows that he did not achieve his goal of having Kmart agree to the set of entirely new terms and conditions contained in the TWTC.

For the reasons detailed above, the court will consider the POTC, as amended and incorporated by the MCA, to contain the forum selection clause agreed to by the parties. Furthermore, since Tessler does not argue that the Michigan forum selection clause is tainted by "fraud, influence, or overweening bargaining power," the court need not consider whether the forum selection clause is unreasonable. See Jumara, 55 F.3d at 880 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972). The court will now examine the § 1404(a) factors to determine whether transfer is appropriate, noting that since the parties have agreed to a valid and enforceable forum selection clause, the burden is now on Tessler to show that it should not be bound by its contractual choice of forum. Id. While courts normally give deference to the plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue. Id. at 880. Thus, for the purposes of this balancing test, the parties' forum preference is the Eastern District of Michigan.

The court turns to the remainder of the private interest factors. Tessler argues that the claims arose in New Jersey and Illinois, where the contracts were executed. However, it appears

the POTC was executed while Kmart was headquartered in Michigan, whereas the MCA places Kmart at an Illinois address. Kmart does not offer any guidance in its brief to aid the court in the resolution of this factor. While the parties do not provide information about where every relevant contract between the parties was signed, it appears from the face of the POTC and MCA that the parties may have mailed the documents back and forth to obtain each other's signatures. The contract claims therefore did not appear to arise in any one forum, and based on the limited submissions of the parties, it is difficult to determine the whether the "center of gravity" of the claims points to one forum or the other. See Park Int'l v. Mody Enters., 105 F. Supp. 2d 370, 377 (D.N.J. 2000). Therefore, this factor cannot be resolved decisively.

For Tessler, New Jersey is the most convenient forum because its only manufacturing facility and corporate offices are located there. Tessler also states that Kmart operates throughout the country, presumably making it easier for Kmart to travel, in comparison with Tessler. Kmart counters that by signing a forum selection clause, a plaintiff is estopped from claiming inconvenience in that forum. See Park Inn Int'l v. Mody Enters., 105 F. Supp. 2d 370, 378 (D.N.J. 2000) (citing Jumara, 55 F.3d at 880).

Tessler notes that its witnesses are located exclusively in New Jersey. Kmart states that it maintains offices in Michigan and some of the materials and individuals with knowledge regarding the parties' business dealings reside in Michigan. Tessler does not claim that its witnesses would not be unavailable in Michigan, but rather merely inconvenienced by any required travel. See Park Inn Int'l, 105 F. Supp. 2d at 378.

Tessler states that its books and records are located exclusively in New Jersey. Kmart counters that there is no reason to believe that any relevant contracts or other documents in Tessler's possession cannot be produced in Michigan. Kmart cites Clark v. Burger King Corp.

11

for the proposition that where documents can be transported or photocopied, their location is entitled to little weight in a § 1404(a) analysis.  255 F. Supp. 2d 334, 339 (D.N.J. 2003).

The court will now turn to the public interest factors.  As a preliminary matter, the court notes that Tessler did not address the public interest factors in its brief because it argued that "the public interests are not of any particular significance" in this case. (Plt. Br. at 12.)  Further, neither party raises any argument regarding the factors of enforceability of the judgment; practical considerations that could make the trial easy, expeditious or expensive; or court congestion, and the court does not foresee any salient issues regarding those three factors.  In the interest of completeness, the court will review the arguments presented by Kmart as to the remaining factors:  familiarity of the trial judge with the applicable state law, and local interest in deciding local controversies.

Kmart argues that the POTC provides a Michigan choice of law provision and it is likely that a federal district judge in Michigan will be more familiar with Michigan law than a federal judge in New Jersey.  Finally, Kmart argues that although New Jersey may have some interest in the action, the public policy of New Jersey, like the public policy of Michigan, favors the enforcement of a contractual forum selection clause, thus pointing towards Michigan venue.

After reviewing the various public and private interest factors, the court does not believe that any of these factors overcome the substantial consideration due to the forum selection clause.

### III.  Conclusion

Defendant's § 1404(a) motion to transfer venue to the Eastern District of Michigan is granted.  The court will enter an order implementing this opinion.

              **_____s/ Dickinson R. Debevoise_____**
               DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 14, 2009

13